HOLMES & JANES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58436. Promulgated March 13, 1934.

*Henry Jacobs, Esq.*, and *J. E. Hammond*, C.P.A., for the petitioner. *E. A. Tonjes, Esq.*, for the respondent.

OPINION.

LANSDON: The respondent has determined that the bonuses paid to the officers of the petitioner in the years 1927, 1928, and 1929 in the guise of additional compensation for services rendered in such years were, in fact, distributions of profit. The petitioner contends that the bonuses were authorized by proper corporate action, that the full amounts were actually paid in the respective years in which authorized, and that, added to stated salaries paid to its several officers, such bonuses were reasonable compensation for services rendered.

The record supports petitioner's contention as to the form of the bonus payments. It also discloses that the amount thereof when included in petitioner's ordinary expenses reduced tax liability for each year to a nominal sum and left a very small surplus available for distribution as dividends and that no dividends as such were paid in 1928 or 1929. Petitioner admits that after the bonuses were paid in 1927 and 1928 the recipients redistributed the amounts thereof among themselves ratably as to their stockholdings. Its counsel argues, however, that such adjustments were wholly outside the corporation and without any bearing on the issues here. He bases this argument on an understanding between Holmes and Janes at the time of the purchase of stock by the latter in April 1927. The alleged understanding was that such principal stockholders, so long as they remained associated in the business, should share in the property and profits in proportions of 60 and 40 percent. This agreement supports the determination of the respondent. If the payments in question were in fact compensation for services rendered, they were without the terms of the agreement and not subject to any adjustment. If they represented profits they were within such terms and adjustments were necessary. The fact that adjustments were made to conform the amounts received to the terms of the agreement indicates very clearly that Holmes and Janes regarded the alleged compensation payments as distributions of profit. We are of the opinion that the bonus payments in 1927, 1928, and 1929 were in fact distributions of profits and therefore not deductible from petitioner's gross income in each of the respective years. *Universal Milking Machine Co.*, 4 B.T.A. 506; *Heflin, Inc.* v. *United States*, 58 Fed. (2d) 482; certiorari denied, 287 U.S. 631; *L. Schepp Co.*, 25 B.T.A. 419. On this issue the determinations of the respondent are affirmed.

Respondent has added to petitioner's gross income for 1928 the amount of $3,500 as profit realized from the sale of a lease on certain business premises in San Francisco. Such amount was not ac-

counted for as received by the petitioner but was paid over to Holmes, who included it in his gross income in his personal income tax return for that year. Petitioner contends that the lease was never assigned to it and so was the property of Holmes when sold. The only proof in support of petitioner's contention is the testimony of Holmes that he personally acquired the lease, always considered it as his individual property, and regarded and reported the profit from the sale thereof as his own income. The contrary evidence is that the petitioner used the premises for the purposes of its business and paid the rents thereon. Neither the lease nor any assignment thereof is in the record. In our opinion the evidence is not sufficient to overcome the presumption of correctness that attaches to the determination of the respondent.

Petitioner also contends that its tax liability for 1928 has been finally determined and settled under a closing agreement in conformity with section 606 of the Revenue Act of 1928. Subsequent to the execution of the closing agreement the respondent transmitted to the petitioner the following memorandum:

Reference is made to the agreement executed by Holmes and Janes, Incorporated, San Francisco, California, under the provisions of Section 606 of the Revenue Act of 1928 with respect to its income tax liability for the year 1928, which was listed on Schedule #3793 and approved by the Secretary of the Treasury on February 1, 1930.

The net income disclosed on the return for this year was $3,955.55. The Revenue Agent who made the original investigation determined a deficiency in the amount of $15.94. The deficiency was assessed and the return closed in accordance with the provisions of Section 606 of the Revenue Act of 1928. Subsequently information was received to the effect that the taxpayer fraudulently understated income for this year. Consequently a reinvestigation was conducted of the taxpayer's books of account and records, which investigation disclosed understatements of income for the years 1927 to 1929, inclusive. For the year 1928 the taxpayer deducted a bonus as having been paid to officers in the amount of $16,650 which, in fact, was a distribution of profits and should not have been deducted from gross income and failed to report the profit on the sale of a lease in the amount of $3,500.00.

At the time of the original investigation, this information was not disclosed to the Revenue Agents. It was not known that the principal stockholder received the benefit of almost the entire amount of the bonus. The information was only discovered after a suit had been filed by one of the stockholders for an accounting.

The General Counsel for the Bureau of Internal Revenue has reviewed the evidence and in a memorandum of February 28, 1931, indicates that there is a sufficient showing of fraud or misrepresentation of a material fact to warrant the setting aside of the agreement.

In view of the fact that the failure of the Bureau to assess and collect the correct amount of tax for the year 1928 was evidently caused by the taxpayer's fraud or misrepresentation of a material fact, the closing agreement above referred to will be disregarded and you are accordingly authorized and directed to eliminate from Schedule #3793 approved by the Secretary of the Treasury on February 1, 1930, the agreement listed thereon in the name of

Holmes and Janes, Incorporated, covering the year 1928 and to take such further action to adjust the tax liability for this year as may be in order.

[Signed]  DAVID BURNET,
*Commissioner.*

Approved: Mar. 7, 1931.
OGDEN L. MILLS,
*Secretary of the Treasury.*

Counsel for respondent argues at length that the act of the Commissioner, approved by the Secretary, abrogating the closing agreement was an exercise of discretionary authority that is not subject to review by the Board, and that such a conclusion is necessary in order to establish our jurisdiction over the tax controversy herein for the year 1928. We are unable to accept this view. If the Commissioner, upon a mere showing that in his opinion indicates fraud, has authority to eliminate a closing agreement, it is obvious that section 606 provides no protection for a taxpayer who has signed such an agreement in good faith. The memorandum abrogating the closing agreement is no more than an allegation of fraud which must be proved before the respondent can recover any additional taxes for the year 1928. The deficiency notice establishes the jurisdiction of the Board to hear and determine all the issues joined in an appeal therefrom.

The respondent has asserted a deficiency for the year 1928. As an affirmative defense the petitioner has produced the closing agreement which automatically establishes on its face that there is no tax liability. The respondent contends that such agreement has been abrogated on a showing of fraud. In our opinion this is not enough. He must prove by convincing evidence that fraud was actually committed. If he successfully carries his burden it then follows that the closing agreement must be set aside and the petitioner's tax liability for the year covered thereby must be redetermined on merits by the Board.

The respondent alleges fraud as to petitioner's return for 1928 in two particulars—(1) that petitioner with intent to evade taxes deducted certain amounts from its income as ordinary and necessary expenses that were in fact distributions of profits and that its book entries relating thereto were intended to cover up the real nature of the payments to the officers; and (2) in failing to include in its gross income on its income tax return the profit of $3,500 realized from the sale of a leasehold. In our opinion the petitioner's attempt to secure deductions from taxable income in the guise of payments for services rendered, where in fact the amounts thereof were distributions of profit, was a willful understatement of income, deliberately made for the purpose of evading taxes. On the allegation of fraud the respondent has sustained the burden of proof. We therefore affirm his action in eliminating the closing agreement from the tax

controversy. The deficiency for 1928 will be determined in the amount asserted by the respondent, and the fraud penalties added to the deficiencies for 1927 and 1928 are affirmed. See *Cooper* v. *United States*, 9 Fed. (2d) 216; *D. C. Clarke*, 22 B.T.A. 314; *E. A. Wickham Estate*, 22 B.T.A. 1393; *L. Schepp & Son, supra.*

Reviewed by the Board.

*Decision will be entered for the respondent.*

