ESTATE OF SHELLA B. GARDNER, DECEASED, T. ALEEN MACY, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 28332–83.    Filed June 25, 1984.

*H. Kent Heller*, for the petitioner.
*Michael W. Bitner*, for the respondent.

## OPINION

PARKER, *Judge*: This case is before the Court on respondent's motion for partial summary judgment under Rule 121.[1] By his motion, respondent seeks a determination that as a matter of law petitioner was not entitled to the special use valuation under section 2032A because petitioner did not so elect on a timely filed return. Petitioner did not file decedent's estate tax return within 9 months of decedent's death, but filed within the 18-day extension of time requested for such filing. Respondent denied petitioner's request for the extension. The sole issue for decision is whether we have jurisdiction to review respondent's exercise of discretion under section 6081 denying petitioner's request for an extension of time to file decedent's estate tax return.

---

[1] Unless otherwise indicated, any reference to "Rules" is to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in question unless otherwise noted.

Since the case is before us on a motion for partial summary judgment, we must follow the rule that "the factual materials presented and the inferences therefrom must be viewed in the light most favorable to the party opposing the motion." *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982); *Elkins v. Commissioner*, 81 T.C. 669, 674 (1983). Consequently, for purposes of this motion, the following statement of facts is taken from petitioner's pleadings, both admitted and denied, and from the attorney's affidavit in opposition to respondent's motion. The facts are viewed in terms most favorable to petitioner.

Shella B. Gardner (decedent) died on November 14, 1979. Her will devised her real property, including two farms, to her daughter, T. Aleen Macy. Petitioner is the Estate of Shella B. Gardner, Deceased, T. Aleen Macy, Executrix. T. Aleen Macy is the duly qualified executrix and resided in Mattoon, Ill., at the time she filed the petition herein. Decedent's estate tax return was due to be filed by August 14, 1980. Sec. 6075(a).

Petitioner relied upon competent counsel for the preparation of the estate tax return. In the week following her death, decedent's file was initially assigned to Mr. Alan Spaniols, an attorney with the firm representing petitioner in this proceeding. On Thanksgiving Day of 1979, Mr. Spaniols was killed in an airplane crash. In reassigning Mr. Spaniols' work, the law firm did not discover that, contrary to the firm's customary practice, Mr. Spaniols had failed to prepare a "statute card" indicating the date decedent's estate tax return was due.

On the day the return was due (August 14, 1980), and for several weeks prior thereto, petitioner's present attorney was engaged in litigation in Federal District Court in Danville, Ill. On August 25, 1980, immediately after returning from Danville, petitioner's attorney, realizing that the return was late, prepared and filed that day a request for an extension of time for filing decedent's estate tax return for a period of 18 days to and including September 1, 1980, i.e., a date 1 week from the date of the request. Decedent's estate tax return (Form 706) was signed by the executrix and her attorney on August 28, 1980, was postmarked on August 30, 1980, and was received in the IRS District Office on September 2, 1980. On a date not disclosed by the record, respondent denied petitioner's request

for an extension without considering the reasons stated for the request.

On October 9, 1980, petitioner's attorney filed a written protest of the denial of the requested extension. In response to petitioner's protest, an officer of the St. Louis Appeals Office telephoned petitioner's counsel to inform him that the protest should be handled after the audit of decedent's estate tax return had been completed. The appeals officer also indicated that based on the stated reasons for the request (described above), the extension should have been granted.

At some point, the District Director of the Springfield District Office sought technical advice from the National Office as to the legal effect of a late-filed return on the election under section 2032A. That Technical Advice Memorandum was dated May 26, 1982, but did not address the matter of the request for extension of time.

On December 7, 1982, after the examining agent had submitted his report, an officer of the St. Louis Appeals Office indicated that the extension should not have been denied without consideration of the circumstances, as it appeared from the file that the District Director's Office had done. Consequently, the appeals officer returned the file to the examining agent in the District Director's Office, directing him to consider the factual circumstances surrounding petitioner's extension request.

On April 19, 1983, the examining agent had a meeting with the executrix, her husband, and her attorney, to discuss the circumstances surrounding the request for an extension of time to file the estate tax return, described above. The examining agent stated that petitioner had made a very strong case for an extension but that his supervisor would not allow him to grant it because decedent or the executrix's husband or both were farmers, and his supervisor disliked farmers, believing farmers were too rich, got away with too much already, and did not deserve any further breaks. Petitioner was not thereafter afforded an appellate conference.

In his statutory notice, mailed to petitioner on July 5, 1983, respondent determined that petitioner was not entitled to elect the special use valuation under section 2032A because the election had not been made on a timely filed estate tax return. Based on this conclusion, and on a minor issue not

before the Court at this time, respondent determined a deficiency in Federal estate tax of $113,635.73 and an addition to tax under section 6651(a) of $5,681.79. Petitioner timely petitioned this Court for a redetermination of that deficiency and addition.

Under section 2032A, a decedent's estate may elect to value certain qualifying property for Federal estate tax purposes based upon its actual ("special") family farm or small business use rather than upon its highest and best use, as would ordinarily be the case under general valuation principles. This election requires strict compliance with various statutory requirements. See generally *Estate of Sherrod v. Commissioner*, 82 T.C. 523 (1984); *Estate of Coon v. Commissioner*, 81 T.C. 602 (1983); *Estate of Cowser v. Commissioner*, 80 T.C. 783 (1983); *Estate of Geiger v. Commissioner*, 80 T.C. 484 (1983). As these cases show, the whole tenor of these statutory requirements is to assure the continued use of the property for family farming or other small business purposes by reducing the tax burden upon such qualified property and to restrict the special use valuation to the limited class of persons intended to be benefited thereby.

As in effect at the time of decedent's death,[2] section 2032A(d)(1) provided as follows:

ELECTION.—The election under this section shall be made *not later* than the time prescribed by section 6075(a) for filing the return of tax imposed by section 2001 (*including extensions thereof*), and shall be made in such manner as the Secretary shall by regulations prescribe. [Emphasis added.]

The regulations provided that the election must be made on a timely filed estate tax return. Sec. 20.2032A–8(a)(3), Estate Tax Regs. In a series of memorandum opinions, we have held that a timely filed return is mandatory, requiring literal compliance, and leaving no room for a "reasonable cause" exception for an untimely return.[3] In these cases, we relied

---

[2] We note that the Economic Recovery Tax Act of 1981 amended sec. 2032A(d)(1) to provide that the election can be made on the first estate tax return filed, whether or not the return is timely filed. Sec. 421(j)(3), Pub. L. 97–34, 95 Stat. 172, 312–313. However, this amendment applies only to the estates of decedents dying after Dec. 31, 1981, sec. 421(k)(1), Pub. L. 97–34, 95 Stat. at 313, and consequently does not apply to the instant case.

[3] See *Estate of Williams v. Commissioner*, T.C. Memo. 1984–178; *Estate of Young v. Commissioner*, T.C. Memo. 1983–686; *Estate of Boyd v. Commissioner*, T.C. Memo. 1983–316. These cases involved the issue as to whether or not "reasonable cause" is relevant where the return was filed late. Respondent seems to assume that that is the issue here. We disagree. Here petitioner takes the position that the return should be treated as timely filed.

upon decisions reaching the same result in construing substantially identical language in section 2032(c), involving the election of an alternate valuation date under section 2032. See *Estate of Ryan v. Commissioner*, 62 T.C. 4, 10 (1974); *Estate of Downe v. Commissioner*, 2 T.C. 967, 970–971 (1943); *Estate of Flinchbaugh v. Commissioner*, 1 T.C. 653, 655 (1943); *Crissey v. United States*, an unreported decision (N.D. N.Y. 1980, 45 AFTR 2d 80–1754, 80–1 USTC par. 13,335).[4] We adhere to these holdings and those in note 3, none of which raised the issue now before the Court.

Decedent's estate tax return was due August 14, 1980, 9 months after her death. Sec. 6075(a). However, section 6081(a) provides that respondent *"may* grant a reasonable extension of time for filing any return * * * required by this title or by regulations." (Emphasis added.) In the case of an income tax return, respondent's regulation requires the request for an extension to be filed "on or before the due date of such return." Sec. 1.6081–1(b)(1), Income Tax Regs. There is no such requirement, however, for a request for an extension to file an estate tax return. Instead, the regulation plainly contemplates that an extension may be granted even though the request is filed *after* the return's ordinary due date. Sec. 20.6081–1(b), Estate Tax Regs.[5]

Petitioner's extension request, filed August 25, 1980 (11 days after decedent's return was otherwise due), asked that the due date be extended to September 1, 1980 (18 days after decedent's return was otherwise due). Had that request been granted, the return would have been timely, having been filed within the extended period for filing;[6] however, respondent denied petitioner's extension request.

---

[4]See also *Estate of Archer v. Commissioner*, T.C. Memo. 1984–57; *Estate of Carpousis v. Commissioner*, T.C. 1974–258; *Estate of Bradley v. Commissioner*, T.C. Memo. 1974–17, affd. per order 511 F.2d 527 (6th Cir. 1975); *Estate of Fisk v. Commissioner*, a Memorandum Opinion of this Court dated Jan. 29, 1952 (11 T.C.M. 77, 21 P-H Memo T.C. par. 52,018), revd. on other grounds 203 F. 2d 358 (6th Cir. 1953).

[5]Sec. 20.6081–1(b), Estate Tax Regs., states that the application for an extension—

"should be made before the expiration of the time within which the return otherwise must be filed and failure to do so may indicate negligence and constitute sufficient cause for denial. It should, where possible, be made sufficiently early to permit the internal revenue officer to consider the matter and reply before what otherwise would be the due date of the return."

[6]Even though the return was not received until Sept. 2, 1980, had the extension been granted, the return would have been deemed filed on Aug. 30, 1980, the day it was mailed. Sec. 7502(a).

Respondent has now moved for partial summary judgment, arguing that petitioner's attempt to elect special use valuation under section 2032A was invalid because it was not made on a timely filed estate tax return. Petitioner argues that respondent abused his discretion in denying the request for an extension, so that the requested extension of time should be treated as granted. Petitioner reasons that the return was thus timely and the section 2032A election on that return therefore valid. In opposition, respondent argues that his statutory discretion to grant an extension of time is absolute and unreviewable, and that since petitioner's request for an extension was denied, the return was untimely and the attempted section 2032A election invalid as a matter of law. The narrow issue is whether or not respondent's exercise of discretion to grant or deny an extension of time under section 6081 is reviewable by this Court. This is an issue of first impression.[7]

There is a strong presumption that the actions of an administrative agency are subject to judicial review. *Dunlop v. Bachowski*, 421 U.S. 560, 567 (1975); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140–141 (1967); *United States v. Winthrop Towers*, 628 F.2d 1028, 1032, 1035 (7th Cir. 1980). Although now incorporated into the Administrative Procedure Act (APA),[8] this basic presumption of reviewability is a fundamental principle of administrative law and is fully applicable regardless of whether an agency is subject to or exempt from the APA. *Peoples Gas, Light & Coke Co. v. U.S. Postal Serv.*, 658 F.2d 1182, 1191 (7th Cir. 1981), and cases cited therein. See *Abbott Laboratories v. Gardner*, 387 U.S. at 140. See also 4 K. Davis, Administrative Law Treatise, secs. 28.07, 28.16 (1958 ed. Supp. 1982). "[J]udicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Abbott Laboratories v. Gardner*, 387 U.S. at 140.

---

[7]In *Estate of Young v. Commissioner*, T.C. Memo. 1983–686, involving sec. 2032A, we assumed that respondent's exercise of discretion was reviewable, but held that he had not abused his discretion. In *Crissey v. United States*, an unreported decision (N.D. N.Y. 1980, 45 AFTR 2d 80–1754, 80–1 USTC par. 13,335), a case involving sec. 2032, the District Court, without discussing the reviewability of respondent's exercise of discretion, held that respondent had not abused his discretion in denying an extension request.

[8]5 U.S.C. secs. 701–706 (1982).

Agency action is exempt from judicial review only where the governing statutes expressly preclude such review or where the action is committed to agency discretion by law. APA sec. 10, 5 U.S.C. sec. 701(a) (1982). See *Abbott Laboratories v. Gardner, supra; Peoples Gas, Light & Coke Co. v. U.S. Postal Serv.*, 658 F.2d at 1190–1192. Section 6081(a) does not, by its terms, preclude judicial review of respondent's denial of an extension. Consequently, we must examine whether such action is nonetheless committed to respondent's discretion by law.

The "committed to agency discretion" exception to the general rule of reviewability is a very narrow one.[9] *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971); *Chaney v. Heckler*, 718 F.2d 1174, 1183 (D.C. Cir. 1983); *Peoples Gas, Light & Coke Co. v. U.S. Postal Serv.*, 658 F.2d at 1190–1191; *United States v. Winthrop Towers*, 628 F.2d at 1032, 1034. This exception applies only in those rare instances where "statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. at 410, and "the determination of whether there is 'law' to apply necessarily turns on pragmatic considerations as to whether an agency determination is the proper subject of judicial review." *Natural Resources Defense Council, Inc. v. S.E.C.*, 606 F.2d 1031, 1043 (D.C. Cir. 1979).

Thus, as various courts have held—

in the absence of a specific statutory preclusion of review, agency action may be determined to be "committed to agency discretion by law" only when a fair appraisal of the entire legislative scheme, including a weighing of the practical and policy implications of reviewability, persuasively indicates that judicial review should be circumscribed. [Fn. ref. omitted.]

*Local 2855, AFGE (AFL-CIO) v. United States*, 602 F.2d 574, 578 and n. 9 (3d Cir. 1979).[10] In 1927, the Supreme Court

---

[9]The use of the word "discretion" in this phrase has been described by commentators and courts as "a linguistic anomaly" and the whole phrase has been defined as "simply a euphemism for agency discretion so broad that it is unreviewable even for abuse of discretion." See *Hondros v. United States Civil Service Commission*, 720 F.2d 278, 292 and nn. 33 & 34 (3d Cir. 1983).

[10]See *Hondros v. United States Civil Service Commission*, 720 F.2d 278, 293 (3d Cir. 1983); *Local 1219, Am. Fed. of Gov. Employees v. Donovan*, 683 F.2d 511, 515 (D.C. Cir. 1982); *American Federation of Gov. Emp., Etc. v. Brown*, 680 F.2d 722, 725 (11th Cir. 1982); *Peoples Gas, Light & Coke Co. v. U.S. Postal Serv.*, 658 F.2d 1182, 1190–1191 (7th Cir. 1981); *Bullard v. Webster*, 623 F.2d 1042, 1046 (5th Cir. 1980). See also *Southern R. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 454–460 (1979); *Morris v. Gressette*, 432 U.S. 491, 501–504 (1977).

employed a similar analysis in rejecting the Government's claim that the Board of Tax Appeals lacked jurisdiction to review certain discretionary actions of the Commissioner of Internal Revenue. See *Blair v. Oesterlein Co.*, 275 U.S. 220, 226–227 (1927). The courts have enumerated various factors to be weighed in determining whether an action is committed to agency discretion by law. These factors include the existence of such broad discretionary power that it is not appropriate for judicial review, whether the agency determination involves political, economic, military or other managerial choices not susceptible to judicial review, and whether the agency determination requires experience or expertise for which legal education or the lawyers' skills provide no particular competence for resolution. See note 9 and cases cited in note 10. The final step is to "inquire whether the considerations in favor of nonreviewability thus identified are sufficiently compelling to rebut the strong presumption of judicial review." *Natural Resources Defense Council, Inc. v. S.E.C.*, 606 F.2d at 1044.

First, our examination of the overall statutory scheme, including the legislative history, discloses no basis upon which "nonreviewability can fairly be inferred." *Barlow v. Collins*, 397 U.S. 159, 166 (1970). See *Southern R. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 454–460 (1979); *Morris v. Gressette*, 432 U.S. 491, 501–504 (1977); *Abbott Laboratories v. Gardner*, 387 U.S. at 141–146. Nothing in the legislative history of section 6081(a) or the related provisions of the Code suggests that Congress intended respondent's action in denying an extension of time to file to be unreviewable. On the contrary, respondent's denial of an extension of time can result in a deficiency, an addition to tax (see sec. 6651(a)), or, as here, both. The specific procedures Congress established for judicial review of respondent's determinations—a deficiency redetermination proceeding in the Tax Court or a refund suit in the District Court or Claims Court—contemplate review of all elements of a deficiency determination or a claim of overpayment. Such review logically and necessarily includes respondent's denial of an extension of time under section 6081, where, as here, the denial of such an extension has a direct impact on the existence and amount of any asserted deficiency.

Second, contrary to respondent's argument, we think that there are ascertainable standards upon which to base our review of respondent's action. See *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. at 410–413; *Chaney v. Heckler*, 718 F.2d at 1185–1187; *United States v. Winthrop Towers*, 628 F.2d at 1034–1035. See also *Blair v. Oesterlein Co., supra*. We are not confined simply to the terms of section 6081(a); instead we may look to related provisions in the overall statutory scheme, such as the requirement for filing (sec. 6018), the time for filing (sec. 6075), and additions for failing to file on time (sec. 6651), and the overall legislative purpose behind this scheme. See *Citizens to Preserve Overton Park v. Volpe, supra*; *Chaney v. Heckler*, 718 F.2d at 1185–1186; *American Federation of Gov. Emp., Etc. v. Brown*, 680 F.2d 722, 726 (11th Cir. 1982); *United States v. Winthrop Towers, supra*. We may also look to respondent's regulations under section 6081 in reviewing his denial of an extension. See *Hondros v. United States Civil Services Commission*, 720 F.2d 278, 294; *American Friends Service Committee v. Webster*, 720 F.2d 29, 43 (D.C. Cir. 1983); *Chaney v. Heckler*, 718 F.2d at 1186; *Local 1219, Am. Fed. of Gov. Employees v. Donovan*, 683 F.2d 511, 515–516 (D.C. Cir. 1982).[11]

Next, we think that respondent's exercise of discretion to grant or deny an extension is suitable for judicial review. See *American Friends Service Committee v. Webster*, 720 F.2d at 45; *Natural Resources Defense Council, Inc. v. S.E.C.*, 606 F.2d at 1045. Compare *American Federation of Gov. Emp., Etc. v. Brown*, 680 F.2d at 726–727; *Bullard v. Webster*, 623 F.2d 1042, 1046–1047 (5th Cir. 1980); *Local 2855, AFGE (AFL-CIO) v. United States*, 602 F.2d at 579–583. The standards in section 20.6081–1(a),[12] Estate Tax Regs., are not unlike those we apply

---

[11]Indeed, we regularly apply respondent's regulations in reviewing various of his discretionary actions relating to his deficiency determinations. Examples, by no means exhaustive, include respondent's allowance of a reserve for bad debts under sec. 166(c), *Roanoke Vending Exchange, Inc. v. Commissioner*, 40 T.C. 735, 740–741 (1963); *Apex Brewing Co. v. Commissioner*, 40 B.T.A. 1110, 1119 (1939); respondent's change of a taxpayer's accounting method under sec. 446(b), *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 531–535 (1979); *Primo Pants Co. v. Commissioner*, 78 T.C. 705, 717–725 (1982); and respondent's determination under sec. 482 to reallocate income, deductions, and/or credits among related taxpayers, *Hospital Corp. of America v. Commissioner*, 81 T.C. 520, 593–600 (1983); *Achiro v. Commissioner*, 77 T.C. 881, 896–900 (1981).

[12]Sec. 20.6081–1(a), Estate Tax Regs., provides:

(a) In case it is impossible or impracticable for the executor to file a reasonably complete return within 9 months * * * from the date of death, the district director or the director of a service

in determining the applicability of the section 6651 addition to tax. Moreover, this and other courts have regularly reviewed similar discretionary actions of respondent.[13] There is nothing to suggest that respondent's exercise of discretion under section 6081 involves any agency expertise beyond the competence of courts. "No delicate political or economic questions present themselves. To the contrary, we need only ask whether [the Government exercised its discretion] in a rational, nonarbitrary and regular fashion." *Hondros v. United States Civil Service Commission*, 720 F.2d at 294. Indeed, here petitioner seeks review of respondent's denial of an extension of time only under an abuse-of-discretion standard; "This limited determination is one which courts are well-equipped to make." *Local 1219, Am. Fed. of Gov. Employees v. Donovan*, 683 F.2d at 516.

Similarly, we do not think that our review of respondent's denial of an extension of time to file the return will impair respondent's ability to carry out his congressionally assigned duties. See *American Friends Service Committee v. Webster*, 720 F.2d at 44; *National Resources Defense Council, Inc. v. S.E.C.*, 606 F.2d at 1044–1045. Our review will not preempt an administrative action or otherwise protract the administrative process. Compare *Morris v. Gressette*, 432 U.S. at 501–503. Our review is part of an overall redetermination proceeding occurring only after respondent has completed his audit and administrative review and has issued his statutory notice of deficiency to the taxpayer. Such review is no more intrusive than our review of respondent's exercise of discretion under other provisions of the Code. See the examples and cases cited in notes 11 & 13 above. See also *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 183 (1957), and *Manocchio v.*

---

center may, upon a showing of good and sufficient cause, grant a reasonable extension of time for filing the return required by section 6018. * * *

[13]See *Kean v. Commissioner*, 469 F.2d 1183, 1188–1189 (9th Cir. 1972), affg. in part, revg. in part 51 T.C. 337 (1968) (denial of an extension of time under sec. 1.1372–3(c), Income Tax Regs., for filing consents to subch. S election); *Hicks Nurseries, Inc. v. Commissioner*, 62 T.C. 138, 144–145 (1974), revd. on another issue 517 F.2d 437 (2d Cir. 1975) (same); *Columbia Gas System, Inc. v. United States*, 473 F.2d 1244, 1250–1251 (2d Cir. 1973) (refusal to accept taxpayer's consents to basis adjustment under sec. 1017 and sec. 1.108(a)–2, Income Tax Regs., on amended return); *Rosefsky v. Commissioner*, 70 T.C. 909, 913–914 (1978) (denial of extension of time under sec. 1033 for acquiring property to replace other property involuntarily converted); *Boyce v. United States*, 186 Ct. Cl. 420, 405 F.2d 526, 531–532 (1968) (same); *United States v. Cury,* an unreported decision (W.D. Va. 1961, 7 AFTR 2d 1759, 61–1 USTC par. 12,003); (denial of extension of time to pay estate tax under predecessor of sec. 6161(a)(2)).

*Commissioner*, 78 T.C. 989, 1000–1001 (1982), affd. 710 F.2d 1400 (9th Cir. 1983), reviewing respondent's exercise of discretion under section 7805(b) in regard to the retroactivity of his regulations.

Two Supreme Court decisions denying interim review of specific administrative actions rely in part upon the subsequent availability of judicial review to protect the interests of the litigants. See *Southern R. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. at 454–455; *Morris v. Gressette*, 432 U.S. at 504–507. That factor is not present here. If respondent's exercise of discretion is not reviewable in a deficiency proceeding here (or in a refund suit), it would appear not to be reviewable at all. See sec. 7421.

This and other courts have been generally unsympathetic in the past to respondent's arguments, express or implied, for unreviewable administrative discretion.[14] We think respondent should fare no better in this case, for he has failed to rebut the strong presumption that administrative discretion remains subject to judicial review. See *Dunlop v. Bachowski*, 421 U.S. at 567; *Chaney v. Heckler*, 718 F.2d at 1188; *Peoples Gas, Light & Coke Co. v. U.S. Postal Serv.*, 658 F.2d at 1192.

We note that we are *not* asserting broad general authority to review respondent's discretionary actions. Our jurisdiction is carefully circumscribed both in its scope and the manner in which it may be invoked. Secs. 6212–6214, 7442. See also secs. 7428, 7476–7478. However, once our deficiency jurisdiction has been properly invoked, we will examine de novo the merits of respondent's deficiency determinations, including his exercise of discretion under section 6081, to the extent that the alleged deficiency and any addition to tax within our deficiency jurisdiction (see sec. 6662) turn upon respondent's discretionary actions. See *Redhouse v. Commissioner*, 728 F.2d 1249 (9th Cir. 1984), affg. *Wendland v. Commissioner*, 79 T.C. 355 (1982); *Estate of Sherrod v. Commissioner*, 82 T.C. at 536–537; *Estate of Young v. Commissioner*, 81 T.C. 879, 880–883 (1983).

---

[14]See, e.g., *Blair v. Oesterlein Co.*, 275 U.S. 220, 226–227 (1927); *Stranahan v. Commissioner*, 42 F.2d 729, 731–732 (6th Cir. 1930), affg. 14 B.T.A. 1405 (1929), cert. denied 283 U.S. 822 (1931) (partially worthless debts, now sec. 166(a)(2)); *Hicks Nurseries, Inc. v. Commissioner*, 62 T.C. at 144; *Remco Steamship Co. v. Commissioner*, 30 B.T.A. 579, 583–584 (1936) (Court-reviewed), affd. 82 F.2d 988 (9th Cir. 1935), cert. denied 299 U.S. 555 (1936) (reallocations under predecessor of sec. 482); *Holmes & Janes, Inc. v. Commissioner*, 30 B.T.A. 74, 79 (1934) (Court-reviewed) (respondent's decision to abrogate statutory closing agreement for fraud; predecessor to sec. 7121).

We also note that reviewing respondent's exercise of discretion under section 6081 is not contrary to our general policy of not looking behind a statutory notice of deficiency to examine respondent's motives or conduct in determining that deficiency. See *Graham v. Commissioner*, 82 T.C. 299, 308–309 (1984), and cases cited therein. Unlike those cases, our examination of respondent's exercise of discretion under section 6081 does not involve the method or procedure by which respondent has made his administrative determination of a deficiency. Rather, our review of respondent's denial of an extension of time to file the estate tax return in this case is necessary for us to determine the merits of respondent's substantive determination of a deficiency. Here the sole reason for denial of the section 2032A special use election (and hence the basis for the major portion of the asserted deficiency) is the assertion that the estate tax return was not timely filed.

For the reasons stated above, we hold that respondent's denial of an extension of time for filing is not immune from review in this Court. We conclude that the appropriate standard of review is a narrow one—whether respondent has abused his statutory discretion. This is a question of fact. *Ballentine Motor Co. v. Commissioner*, 321 F.2d 796, 800 (4th Cir. 1963), affg. 39 T.C. 348 (1962); *Hospital Corp. of America v. Commissioner*, 81 T.C. 520, 594 (1983); *Foster v. Commissioner*, 80 T.C. 34, 160, 178 (1983).

Petitioner's factual allegations regarding the reasons respondent denied the request for an extension of time are twofold: (1) An initial automatic denial without considering the facts and circumstances and (2) a denial on reconsideration solely because decedent or the executrix's husband or both were farmers, the very class of persons the section 2032A special use election was intended to benefit. Such allegations, if proved, would constitute the very essence of arbitrary administrative action and an abuse of the discretion granted. See *Wong Wing Hang v. Immigration and Naturalization Serv.*, 360 F.2d 715 (2d Cir. 1966), where Judge Friendly stated that agency action would be an abuse of discretion "if it were made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group," 360 F.2d at 719. In this case, there remains a

genuine issue of material fact as to the reasons for the denial, and consequently, summary judgment is inappropriate. Rule 121(b); *Elkins v. Commissioner*, 81 T.C. 669 (1983). See also *Take v. Commissioner*, 82 T.C. 630 (1984). Therefore, respondent's motion will be denied.

*An appropriate order will be entered.*